UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EVA GARCIA de RIOS,<br><br>    Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 1:21-cv-1345-TLN-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO AFFIRM THE COMMISSIONER'S DECISION, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITYAND AGAINST PLAINTIFF**<br><br>**(Doc. 19, 21)** |

### I. **Introduction**

Plaintiff Eva Garcia de Rios seeks judicial review of a final decision of the Commissioner of Social Security denying her application for social security disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act.[1]

### II. **Factual and Procedural Background**

Plaintiff applied for benefits on January 2, 2019, alleging a disability onset date of February 1, 2018. AR 234, 240. The Commissioner denied the applications initially on April 18, 2019, and on reconsideration on May 20, 2019. AR 120, 127. Plaintiff appeared for a hearing before an ALJ on August 24, 2020. AR 38–61. The ALJ issued an unfavorable decision on October 9, 2020. AR 15–37. The Appeals Council denied review on July 9, 2021 (AR 1–8) and this appeal followed.

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge. Doc. 7, 9.

1

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the

claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability; 2- whether the claimant had medically determinable "severe impairments"; 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work; and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.   The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of February 1, 2018. AR 24. At step two the ALJ found that Plaintiff had the following severe impairments: lumbar spine degenerative disc disease, right shoulder degenerative joint disease, diabetes mellitus, hypertension and stage IV chronic kidney disease. AR 24.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 24–25.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: never climb ladders, ropes or scaffolds; occasionally stoop and crawl; frequent overhead reaching with the right upper extremity; occasional exposure to unprotected heights; occasional use of moving hazardous machinery. AR 25–29.

At step four the ALJ concluded that Plaintiff could perform her past relevant work as a migrant leader. AR 30. At step five, in the alternative, the ALJ found that Plaintiff could perform the following jobs existing in significant numbers in the national economy: cleaner, housekeeping;

3

marker; silver wrapper.  AR 30–31.  The ALJ therefore concluded that Plaintiff was not disabled since the alleged onset date of February 1, 2018.  AR 32.

## V. **Issue Presented**

Plaintiff asserts one claim of error: the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations and failed to offer legitimate reasons for rejecting Plaintiff's subjective complaints.

### A. **Legal Standard**

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).

Before proceeding to steps four and five, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins,* 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making

4

findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

As the Ninth Circuit recently clarified in *Ferguson*, although an ALJ may use "*inconsistent* objective medical evidence in the record to discount subjective symptom testimony," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

In addition to the objective evidence, the other factors considered are: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5)

treatment other than medication; 6) other measures the claimant uses to relieve pain or other symptom; and 7)) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

### B. <u>Analysis</u>

Plaintiff asserts that the ALJ inadequately addressed her fatigue and recurrent urinary tract infections (UTIs) caused by her chronic kidney disease (CKD).

#### 1. <u>Fatigue</u>

There is no genuine dispute that Plaintiff's CKD could reasonably be expected to cause some degree of fatigue as indicated by the medical literature Plaintiff cites. Br. at 8 (citing CJASN September 2021, 16 (9) 1445-1455; DOT: https://doi.org/10.2215/CJN.19891220). The ALJ did not conclude otherwise, nor does Defendant contend otherwise. However, there is little support for Plaintiff's contention that she reported fatigue sufficiently severe that it would preclude light work activity as specified in the RFC.

Plaintiff emphasizes her complaints which she describes as both "work limiting fatigue" and "excessive fatigue," but those characterizations are not present in the cited records and, if they were, they are still not inconsistent with an RFC for light exertional work.

To begin, Plaintiff points to her testimony that she gets tired and must rest between chores. Br. at 8. The full statement from the hearing transcript reads as follows:

> Q: Day-to-day how are your kidneys affecting you?
>
> A: Well, like it's affecting my day-to-day a lot because I can't do the chores that I have to do sometimes because of my back pain and because it makes me tired. Whenever I exert any type of effort actually I have to stop. And it's like I'm needing more rest in between and so it's affecting my chores because I try to do some, but I can't do as many as I used to.
>
> AR 47.

This testimony is not inconsistent with an RFC for light work even if the ALJ was inclined to accept


treatment other than medication; 6) other measures the claimant uses to relieve pain or other symptom; and 7)) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

### B. <u>Analysis</u>

Plaintiff asserts that the ALJ inadequately addressed her fatigue and recurrent urinary tract infections (UTIs) caused by her chronic kidney disease (CKD).

#### 1. <u>Fatigue</u>

There is no genuine dispute that Plaintiff's CKD could reasonably be expected to cause some degree of fatigue as indicated by the medical literature Plaintiff cites. Br. at 8 (citing CJASN September 2021, 16 (9) 1445-1455; DOT: https://doi.org/10.2215/CJN.19891220). The ALJ did not conclude otherwise, nor does Defendant contend otherwise. However, there is little support for Plaintiff's contention that she reported fatigue sufficiently severe that it would preclude light work activity as specified in the RFC.

Plaintiff emphasizes her complaints which she describes as both "work limiting fatigue" and "excessive fatigue," but those characterizations are not present in the cited records and, if they were, they are still not inconsistent with an RFC for light exertional work.

To begin, Plaintiff points to her testimony that she gets tired and must rest between chores. Br. at 8. The full statement from the hearing transcript reads as follows:

> Q: Day-to-day how are your kidneys affecting you?
>
> A: Well, like it's affecting my day-to-day a lot because I can't do the chores that I have to do sometimes because of my back pain and because it makes me tired. Whenever I exert any type of effort actually I have to stop. And it's like I'm needing more rest in between and so it's affecting my chores because I try to do some, but I can't do as many as I used to.

AR 47.

This testimony is not inconsistent with an RFC for light work even if the ALJ was inclined to accept

the testimony as true. The testimony begs more questions than it answers, including: 1- what are the chores she used to do but can no longer do; 2- what are the chores she can still do to some extent albeit with rest breaks in between; 3- how long must she rest in between these chores; and 4- if she is able to rest in between chores, how many hours of chores can she perform in a day? Some effort to answer these questions was needed to substantiate Plaintiff's argument that she cannot meet the exertional demands of light work.

Additionally, it is notable that the first impediment she identified to her ability to do chores was back pain, a subject the ALJ addressed at length, including physical and imaging findings concerning her lumbar degenerative disc disease, but which Plaintiff does not identify as a basis for her appeal. Granted, flank pain caused by kidney problems can present as back pain.[2] Plaintiff's response concerning back pain could indeed be related to her kidneys and not her lumbar spine. Importantly though, regardless of the source of the pain, the basis for Plaintiff's appeal as articulated in her brief is that the ALJ failed to adequately address limitations stemming from fatigue, not limitations stemming from back pain.

In short, at the hearing counsel asked an open-ended question and Plaintiff provided a fairly vague response. Counsel did not ask follow-up questions to clarify the intensity, persistence, and limiting effects of Plaintiff's fatigue with any reasonable degree of specificity. The ALJ therefore had no obligation to identify clear and convincing reasons for "rejecting" subjective statements as to the intensity, persistence, and limiting effects of symptoms given that Plaintiff did not offer such statements to begin with. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

---

[2] "Pain caused by kidney disorders usually is felt in the side (flank) or small of the back." *See* https://www.merckmanuals.com/home/kidney-and-urinary-tract-disorders/symptoms-of-kidney-and-urinary-tract-disorders/flank-pain

Plaintiff next emphasizes that she reported fatigue at her initial consultation with a nephrologist and at nearly every follow-up appointment thereafter. Br. at 9 (citing AR 363, 369, 766, 846, 851, 852. The cited records include two visits with Dr. Chandra at the Nephrology Group, the first one dated October 17, 2018, which was duplicated at AR 363, 852, and the second dated December 6, 2018, which was duplicated at AR 369 and AR 846. Plaintiff also cited an emergency department visit at Community Medical Centers dated April 4, 2018 (AR 766). Indeed, all three visits reflect a positive symptom for "feeling tired (fatigue)." *Id.* Although the visits were not quite as numerous as Plaintiff suggested, they certainly corroborate that Plaintiff experienced fatigue as reported to her clinicians. However, the mere presence or absence of that non-specific symptom is not particularly informative from a functional perspective. Plaintiff does not point to anything in these records, for example a history of present illness (HPI), which describes the intensity, persistence, and limiting effects of her fatigue. Thus, there is no basis to conclude that her fatigue was inconsistent with light exertional work.

Plaintiff also underscores that her clinicians opined that she was unable to return to her past work. *See* AR 844 (nephrology progress note stating "PCP asked to stay off work (farm work), due to medical conditions including worsening CKD. I agree."); AR 893 (same); AR 896 (same); AR 900 (same). The quoted statement at the end of that progress note, repeated on multiple occasions, was conclusory in that it did not address limitations arising from Plaintiff's CKD, or the physical functions that were affected. As such, it does not amount to a functional opinion but rather a conclusion on the ultimate issue of disability which the ALJ need not and did not address. *See* 20 CFR 404.1520b(c), 416.920b(c).

Plaintiff does however cite a May 2020 functional opinion from her primary care physician, Dr. Contreras, which identified various exertional limitations that would preclude even sedentary work, including that Plaintiff could stand and walk less than 1 hour per day, rarely lift less than 5

pounds, and never lift more than 5 pounds. AR 886-89. The ALJ explained her reasoning for rejecting this opinion, namely that the extreme limitations were inconsistent with the record including Dr. Contreras's own unremarkable physical examination findings, his notes indicating Plaintiff's positive response to medication, and the activities of daily living reported to the consultative examiner such as cooking, cleaning, driving, and shopping. AR 29. The ALJ also referenced Dr. Wagner's consultative examining opinion which reflected that Plaintiff could perform medium work. AR 28. Plaintiff does not address the ALJ's explanation, nor did Plaintiff assert a claim of error based on the ALJ's analysis of the opinion evidence.

Plaintiff further emphasizes that she reported to Dr. Wagner, the consultative examiner, that she can walk 4-5 blocks at a time (AR 818), and that she reported in her pain questionnaire that her ability to walk was limited (AR 313). Importantly, those records reflect that the walking limitation was secondary to low back pain, not fatigue.

In sum, the assertion that chores and other daily activities were difficult and fatigue inducing is not inconsistent with an RFC for light exertional work. The RFC is not intended to be a representation of the most a claimant can do while remaining symptom free. Rather, the RFC is "the most you can still do despite your limitations." 20 C.F.R. § 416.945.

### 2. Urinary Tract Infections

Here, Plaintiff contends that "the ALJ erred in failing to offer any clear and convincing reason for discounting testimony regarding the frequency and duration of episodic UTI's." Br. at 10. Plaintiff explains that she reported to her nephrologist at a December 4, 2019 follow up that she had a history of recurrent UTIs, that she gets them 3-4 times per year, and that they are accompanied by a feeling of fever and illness for several days associated with the episodes. AR 899-900. Br. at 10. Plaintiff contends that cumulatively the impact of her UTI's would result in work preclusive absenteeism given the VE's testimony that 5 or more absences per month would

be work preclusive. AR 56.  However, this argument is not persuasive, at least if one uses the estimates she provided at the December 4, 2019 nephrology visit, namely 3 to 4 episodes per year resulting in fever and illness for several days.  Br. at 10 (citing AR 899-900).  As such, this would not cumulatively approach the 5 absences per month, 60 absences per year, even assuming the associated "feeling [of] fever" and illness were sufficiently severe that she would necessarily be absent from work for an unspecified period of time.

Plaintiff further argues that her testimony was consistent with her reports to her clinicians, but that is not the case.  At the hearing she reported 2 UTIs per month, which equates to 24 per year, compared to the estimate of 3 to 4 per year as stated to her clinician on December 4, 2019.  AR 48.  Plaintiff also testified that recovery time ranges from about 10 days to 3 weeks depending on whether she receives an injection or oral medication.  Notably, the December 4, 2019 nephrology visit was about 9 months prior to the hearing which took place August 24, 2020, so any potential progression of her CKD would not reasonably explain the stark difference in reported UTI frequency.  Even assuming her UTI frequency did increase significantly during that 9 month time period, and that both of her estimates were accurate, there would still be no basis to use the estimates she provided at the hearing and apply them to the entire period under review, or for that matter any discrete 12-month period during that time.

Even using the estimates provided at the hearing, Plaintiff's testimony does not establish that she would necessarily be so debilitated during the UTI recovery period that she would unavoidably be absent from work.  Rather, she stated without elaboration that during the recovery period she "can't do anything."  AR 48.  Liberally construed, this may seem rather all-encompassing, but counsel certainly could have asked Plaintiff for more detail as to what specific obstacles the UTIs posed to her functioning.  Counsel did not do so, but rather inquired as follows:

> Q: Okay. You mentioned earlier that you basically -- it's hard for you to do anything.
> I believe that means it's hard to get out of bed. Who takes care of you when this

>happens?
>
>A: When I get sick like that, it's my son because he works in the afternoon, so he's able to stay with me throughout the entire morning. And then in the afternoon he goes to work and then his wife arrives and then she'll stay with me the rest of the day.

AR 49.

By this question Counsel seems to suggest that Plaintiff was bedridden during UTI recovery. However, Plaintiff responded to the only question asked, namely who takes care of her during a UTI recovery period.  During this line of questioning Plaintiff explained that 3 weeks is the amount of time it takes her "to feel completely better to be able to do things that I normally do . . ." *Id.* It does not follow however that she would be unavoidably absent from work unless and until she was completely asymptomatic.  Again, the RFC is not a representation of the most a claimant can do while remaining symptom free.  Rather, the RFC is "the most you can still do despite your limitations." 20 C.F.R. § 416.945.

Thus Plaintiff's subjective statements, even if liberally construed and credited as true, do not reasonably establish that she would be absent 5 or more days per month due to recurrent UTIs or associated recovery periods.

Finally, Plaintiff contends the ALJ mischaracterized the record by repeatedly stating that her clinician's described her CKD as "stable" despite:  1- the fact that the ALJ herself acknowledged Plaintiff's CKD worsened after the state agency physicians' review; and 2- despite other references in the medical records indicating that the CKD was worsening and was re-graded from stage 3 to stage 4 in February of 2019 (AR 841).

Defendant responds that it was not inconsistent for the ALJ to note that the condition worsened following the state agency physicians' review at the initial/reconsideration levels, while nevertheless emphasizing that it stabilized thereafter, that the ALJ was simply quoting Plaintiff's clinicians in describing the condition as stable during the period of time after her CKD worsened.

*See* AR 28, 890 ["renal fx is stable" in June 2019 despite progressing to stage 4], 894 ["renal fx is stable" in August 2019], 896 [reviewing laboratory findings and assessing they showed "this is stable/better" in August 2019]; see AR 752 ["Renal function improved" in February 2019]). Importantly however, if that description by the ALJ was imprecise the error lies with Plaintiff's clinicians and not with the ALJ.

Further, although Plaintiff's CKD was, during relevant periods, categorized either stage 3b (moderate to severe loss of kidney function), or stage 4[3] (severe loss of kidney function), the records, even as described by Plaintiff, reflect that Plaintiff's CKD did stabilize after it was regraded a stage 4 with an eGFR of 25.2 ml/pm[4] on February 11, 2019. *See* AR 841 (eGFR of 25.2 on 2/11/19); AR 892 (eGFR of 25 on 6/11/19); AR 896 (eGFR of 30 on 8/26/19); AR 899-900 (eGFR of 26 on 12/4/19). However, this stabilization does not discount the seriousness of Plaintiff's situation given that Plaintiff's CKD only "stabilized" once it was within about 10 percentage points of kidney failure. Nevertheless, for purposes of adjudicating Plaintiff's current claim of error, the ALJ's characterization of Plaintiff's CKD as "stable" is not integral to the outcome. Contrary to Plaintiff's claim of error, the subjective statements she offered to her clinicians along with the testimony she offered at the hearing, even if credited as true, do not establish or even strongly suggest that her fatigue or UTIs would preclude her from meeting the exertional demands of light work and maintaining attendance within customary tolerances.

## VI. **Recommendations**

---

[3] There are 5 stages of CKD. Stage 4 is defined as an eGFR of 15-29 (corresponding to 15 to 29% kidney function), whereas 90 is normal. Stage 5 is defined as an eGFR below 15 which is considered kidney failure at which point patients are candidates for dialysis and kidney transplant. *see* https://www.kidney.org/atoz/content/gfr (defining CKD stages); *see also https://www.kidney.org/news/monthly/When_Should_I_Start_Dialysis* (noting that stage 5 CKD qualifies for dialysis and kidney transplant).

[4] eGFR (estimated glomerular filtration rate), is sometimes expressed as a percentage and sometimes expressed in terms of ml/pm, but the numerical figure is constant. In other words, an eGFR of 90 ml/pm (normal) corresponds to 90% kidney function, an eGFR of 25 ml/pm corresponds to 25% kidney function, and so forth. https://www.kidney.org/atoz/content/gfr.

For the reasons stated above, the recommendation is as follows:

1. That Plaintiff's motion for summary judgment (Doc. 19) be **DENIED.**

2. That Defendant's cross-motion (Doc. 21) be **GRANTED.**

3. That the decision of the Commissioner of Social Security be **AFFIRMED**.

4. That the Court Clerk of Court be directed to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Eva Garcia de Rios.

**VII.** **Objections Due Within 14 Days**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **August 5, 2024**                          /s/ Gary S. Austin
                                                UNITED STATES MAGISTRATE JUDGE